IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAITLIN YOUELL,

    Plaintiff,

vs.                                                      Civ. No. 17-00512 KG/KBM

MAGELLAN HEALTH SERVICES
OF NEW MEXICO, INC. D/B/A
MAGELLAN HEALTH, MAGELLAN
HRSC, INC., MAGELLAN HEALTH, INC.,
 and PATTI MACOMBER,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Motion for Remand, filed on May 30, 2017. (Doc. 10). Defendant Magellan Health, Inc.'s ("Magellan Health") Response was filed on June 13, 2017, and Plaintiff's Reply was filed on July 3, 2017. (Docs. 15, 17). The Court conducted telephonic hearings on the Motion to Remand on September 21, 2017, and December 7, 2017, in which Timothy L. White represented Plaintiff, and Amelia M. Willis represented Defendant Magellan Health. For the following reasons and those stated in open court, the Court denies Plaintiff's motion.

    *I.*    *Procedural History*

Plaintiff alleges claims against Defendant Magellan Health for Retaliation in Violation of the New Mexico Human Rights Act (NMHRA); Discrimination on the Basis of Physical Handicap And/Or Serious Medical Condition in Violation of the NMHRA; Discrimination on the Basis of Race, in Violation of the NMHRA; Breach of Implied Contract; and Breach of Implied Contract to Follow Certain Procedures. ("Original Complaint" Doc. 1-1) at 2-8. The Original

Complaint was filed in New Mexico State District Court, First Judicial District, on December 19, 2016. (Doc. 1-1) at 2.

On April 21, 2017, Defendant Magellan Health, an out-of-state entity, informed Plaintiff, a New Mexico resident, through counsel, of its intent to remove the case to federal court. (Doc. 3-1) at 1, ¶ 3. On April 24, 2017, Plaintiff filed an amended complaint, adding her former supervisor and Magellan employee, Patti Macomber, as a defendant.[1] (Doc. 1-1) at 9-15. Defendant Macomber is a resident and citizen of New Mexico. *Id.* at 10, ¶ 3.

On May 1, 2017, Defendant Magellan Health filed a Notice of Removal in this Court, asserting diversity subject-matter jurisdiction, stating the amount in controversy exceeds $75,000. (Doc. 1) at 2-7. Defendant Magellan Health states it is incorporated in Delaware and has its principal place of business in Arizona, and that Plaintiff is a citizen of New Mexico. *Id.* at 3-4, ¶¶ 14-17; (Doc. 1-1) at 3, ¶ 6. Defendant Magellan Health argues this Court has jurisdiction because Defendant Macomber, although a non-diverse party, was fraudulently joined into this lawsuit. (Doc. 1) at 4-7.

On May 30, 2017, Plaintiff filed its Motion for Remand, (Doc. 10), challenging Defendant Magellan's contention that the amount in controversy exceeds $75,000. On September 21, 2017, this Court held a hearing on the Motion to Remand to consider the amount in controversy. This Court took that issue under advisement and requested further briefing on the question of diversity and, specifically, whether the fraudulent joinder exception to the complete diversity requirement applies. On December 7, 2017, the Court held a second hearing

---

[1] Plaintiff complied with Rule 1-015(A) NMRA in amending her complaint. Under Rule 1-015(A), "[a] party may amend [her] pleading once as a matter of course at any time before a responsive pleading is served . . . ." Here, Defendant Magellan Health did not serve a responsive pleading, but waited until the Amended Complaint was filed to remove the case to this Court.

on the Motion to Remand. For the reasons stated on the record and for those set forth below, the Court concludes it has subject matter jurisdiction.

II.     *Removal under 28 U.S.C. § 1441(a)*

A defendant can remove a civil case brought in state court if the District Courts of the United States have original jurisdiction. 28 U.S.C. § 1441(a). Removal under Section 1332(a) establishes original jurisdiction in the District Courts in matters between citizens of different states and in which the amount in controversy exceeds $75,000. The removing party bears the burden of proving jurisdiction under Section 1332(a). *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.").

A. *Amount in Controversy Requirement*

The amount in controversy requirement is determined by the information before the Court at the time of removal. *See Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) ("the propriety of removal is judged on the complaint as it stands at the time of the removal.") (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)). And "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

The removing party can use the complaint, interrogatories, affidavits "or other evidence submitted in federal court," to determine the amount in controversy. *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). "Furthermore, a plaintiff's proposed settlement amount 'is

3

relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.'" *Id.* (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)). "Attorney's fees can be included in the amount in controversy if the underlying state law on which one or more of the plaintiff's claims is based permits an award of attorney's fees." *Zozaya v. Standard Insurance Company*, 2015 WL 11118066, at *4 (D.N.M.) (citing *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998)).

Defendant Magellan Health argues that Plaintiff's estimation of the case and the prospect of attorney's fees put the amount in controversy in this case beyond $75,000. (Doc. 15) at 6. This Court agrees. Correspondence between Defendant's counsel and Plaintiff's counsel between March 28, and 29, 2017, set the amount in controversy at least at $75,000, $50,000 of which was for compensatory damages for Plaintiff's loss of employment and the rest was for emotional distress damages. *See* (Doc. 21) at 8.

Moreover, Plaintiff alleges claims under the NMHRA. Notably, the amount referenced in the correspondence between counsel does not include attorney's fees, which, as explained below, are recoverable for those claims she brings under the NMHRA. Specifically, under the NMHRA, "the court in its discretion may allow actual damages and reasonable attorney's fees and the state shall be liable the same as a private person." NMSA 1978, § 28-1-13(D) (Repl. Pamp. 2012). Indeed, Plaintiff includes attorney's fees in her request for relief. (Doc. 1-1) at 15. Therefore, the Court concludes, while reserving judgment on the question of attorneys fees, that if Plaintiff succeeds in her NMHRA claims, she could recover reasonable attorney's fees. Such fees "may significantly add to the amount in controversy." *Zozaya* 2015 WL 11118066, at *4. Therefore, based on the record existing at the time of removal, Plaintiff has placed more than $75,000 in controversy.

4

Plaintiff, nevertheless, argues that her counsel's affidavit averring to pursue no claim nor seek any amount beyond $75,000 demonstrates that the amount in controversy does not exceed $75,000. (Doc. 10) at 3-7. Plaintiff counsel's affidavit states, in relevant part, "[a]s attorney for plaintiff, I represent to the Court that [plaintiff] will not seek, nor will I on her behalf, any recovery with respect to the claims raised in the Amended Complaint of more than $75,000, exclusive of interest and costs." (Doc. 10-1) at 1.

The Court views Plaintiff counsel's position as a stipulation to not pursue or accept more than $75,000. Post-removal stipulations and affidavits may be considered by the court if the amount in controversy is ambiguous at the time of removal. *See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). The Court's analysis does not end with the existence of a stipulation, however. Indeed, the Court must determine whether a stipulation clarifies an ambiguous amount in controversy. *See California Casualty Insurance Co. v. Joy*, 99-cv-01432-MV-RLP, (Doc. 37) (D.N.M. Apr. 20, 2000) (remanding case in which stipulation clarified amount in controversy and was consistent with non-removing party's pre-removal position).

Here, the Court concludes that there was no ambiguity at the time of removal. Significantly, Plaintiff's settlement demand of $75,000 was limited to compensatory damages for the loss of her employment and emotional distress damages. *See* (Doc. 21) at 8. The settlement demand did not include attorney's fees, other compensatory damages, or lost employment benefits. Thus, the combination of the settlement demand and the possibility of attorney's fees unambiguously put the amount in controversy in excess of $75,000. Plaintiff counsel's post-removal stipulation is not determinative. Therefore, the Court concludes that Defendant Magellan Health has met its burden of showing the requisite amount in controversy under Section 1332(a).

### B. Complete Diversity Between the Parties

"In order to invoke diversity jurisdiction, 'a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.'" *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013) (quoting *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006)). Generally, complete diversity does not exist where any plaintiff has the same residency as any defendant. *Id*. An exception applies, however, when the non-diverse defendant has been fraudulently joined, allowing a court to ignore such defendant for "purposes of assessing complete diversity." *Id.* at 988 (citing *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967)).

"To establish [fraudulent] joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). This burden "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano v. Allstate Indemnity*, 2000 WL 525592, at *2 (10th Cir. 2000). The Court should "pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). Additionally, the

Court is sensitive to the possibility of gamesmanship through the use of fraudulent joinder.[2] *See Linnin v. Michielsens*, 372 F. Supp. 2d 811, 824 (E.D. Va. 2005) (discussing "procedural gamesmanship" by plaintiffs' attorneys by including non-diverse defendants to defeat diversity only to remove such defendants after one-year removal period expires); *see also NKD Diversified Enters. v. First Mercury Ins. Co.*, 2014 WL 1671659, at *2 (E.D. Cal.) ("Although the doctrine of fraudulent joinder and bad faith exception are both to thwart gamesmanship by plaintiffs in diversity cases, the bad faith and fraudulent joinder standards are not the same.").

Here, Defendant Magellan Health argues that Plaintiff fraudulently joined Defendant Macomber in that Plaintiff cannot establish a cause of action against Defendant Macomber. (Doc. 24) at 5. Specifically, Defendant Magellan Health argues that Plaintiff failed to establish claims against Defendant Macomber under the NMHRA or for breach of implied contract.

*1. NMHRA Claims*

Defendant Magellan Health asserts that Plaintiff's NMHRA claims are time-barred. The statute of limitations for claims under the NMHRA is ninety days. *See* NMSA 1978, § 28-1-13(A) (Repl. Pamp. 2012); *see also Williams v. Mann*, 2017-NMCA-012, ¶ 12 ("A suit alleging an unlawful discriminatory practice under the NMHRA must be commenced within 90 days of the termination of [the grievance and administrative reconciliation process set out in the NMHRA].") (citing § 28-1-13(A)). Plaintiff's Original Complaint met this time limit because it

---

[2] At the December 7, 2017, hearing on the Motion, and when asked, Plaintiff's counsel represented that Defendant Macomber was not included in the Original Complaint because of "an oversight." (Doc. 34) at 3, lines 6-12. The Court finds this representation somewhat mystifying in view of the correspondence between counsel. Specifically, in his correspondence to opposing counsel explaining the Amended Complaint, Plaintiff's counsel states, "[Y]ou want to remove a case because you think it benefits your client, and I just took steps to counter that, because it benefits mine. I would not be representing the client properly if I didn't. We both know that federal court in [New Mexico] is a very unfriendly place for plaintiff's employment cases." (Doc. 3-7) at 1.

was filed in the First Judicial District Court on December 19, 2016.[3] (Doc. 1-1) at 2. However, the Original Complaint did not contain any claims against Defendant Macomber.

The Amended Complaint alleging claims against Defendant Macomber was not filed until April 24, 2017, well past the ninety-day limitations period. The following timeline is illustrative:



Plaintiff argues that her claims against Defendant Macomber survive the statute of limitations because the Amended Complaint relates back to the Original Complaint. (Doc. 29) at 3-4. The Court disagrees. In order for Plaintiff's Amended Complaint to relate back to the original Complaint it would need to meet the requirements of Rule 1-015(C) NMRA.[4]

---

[3] Plaintiff also notes in her complaints that she received "her right to sue letter and/or determination from EEOC on or about September 21, 2016." (Doc. 1-1) at 3, 10. If the ninety days runs from the Equal Employment Opportunity Commission ("EEOC") letter then Plaintiff would have had till December 20, 2016, to file her complaint. Plaintiff would also meet this time limit because she filed her complaint on December 19, 2016.

[4] The Court is applying the New Mexico Rules of Civil Procedure for the District Courts because the Original Complaint and Amended Complaint were filed in the First Judicial District Court and this Court did not have jurisdiction until the Notice of Removal. *See* Fed. R. Civ. P. 81(c)(1) ("[The Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court."); *see also Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (applying Texas rules of civil procedure for relation back analysis, and noting that under Fed. R. Civ. P. 81(c)(1) the Federal Rules of Civil Procedure apply to a civil action removed from state court,

Rule 1-015(C), requires Plaintiff to show that the Amended Complaint arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the" Original Complaint, and that Defendant Macomber "(1) has received such notice of the institution of the action that [she] will not be prejudiced in maintaining [her] defense on the merits; and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [her]." Notice may be informal or formal. *Romero v. Ole Tires, Inc.*, 1984-NMCA-092, ¶ 15, 101 N.M. 759.

It is clear that claims in the Amended Complaint arise from conduct, transaction, or occurrences set forth in the Original Complaint. This is because the two complaints are identical except for the addition of Defendant Macomber. *Compare* (Doc. 1-1) at 2-8, *with* (Doc. 1-1) at 9-15. But Plaintiff has not shown that Defendant Macomber has received notice such that she will not be prejudiced in maintaining her defense on the merits. Plaintiff argues that Defendant Macomber received notice of this action because she was named in Plaintiff's Charge of Discrimination. *See* (Doc. 29) at 4-5; (Doc. 29-1) at 4, 6-7. Plaintiff, however, fails to show how the Charge of Discrimination is sufficient to meet the notice requirement under Rule 1-015(C)(1).

Plaintiff relies on *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256 (D.N.M. 2011); *Lobato v. N.M. Env't Dept.*, 2012-NMSC-002, 267 P.3d 65; *Welch v. City of Albuquerque*, 2017 WL 1508623, (D.N.M. Apr. 4, 2017), and other cases from this District as support. *See* (Doc. 29) at 5-8. These cases are distinguishable. For example, in *Campos*, United States District Judge James O. Browning considered whether a group of plaintiffs exhausted administrative remedies against an individual defendant when some of the plaintiffs misnamed

---

but "[t]hey do not provide for retroactive application to the procedural aspects of a case that occurred in state court prior to removal to federal court.").

9

the individual defendant in their charges filed with the EEOC. 828 F. Supp. 2d at 1275. In explaining that the NMHRA allows for claims against individual defendants, unlike Title VII, Judge Browning highlighted that "the Supreme Court of New Mexico would likely recognize that complaining about a person in the text of a charge would be sufficient to name them as a respondent in the case." *Id.* at 1276-1277 (citing *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311) ("the Supreme Court of New Mexico would likely consider whether the misspelling prevented the defendant from having notice of the charge or frustrated the respective agency's investigation and attempted reconciliation of the matter."). Judge Browning then held that the individual defendant had notice of the discrimination charges because one of the plaintiffs correctly named the individual defendant and the other plaintiffs provided information on the individual defendant's alleged discriminatory conduct. *Id.* at 1277-1278 (noting its belief that New Mexico Supreme Court would decide accordingly, although it had not previously decided the issue of whether misnamed defendant is on notice of discrimination charges before administrative body).

More recently, this Court has considered the exhaustion of administrative remedies under the NMHRA in *Welch v. City of Albuquerque*. *See* 2017 WL 1508623. In *Welch*, this Court considered whether a plaintiff exhausted her administrative remedies under the NMHRA when she did not name certain defendants as discriminating parties in a charge of discrimination. *Id.* at *4-5. This Court stated the general rule that exhausting administrative remedies requires naming the discriminating party in the charge of discrimination in the appropriate section and obtaining an order from the Human Rights Commission to proceed in an appeal to a district court. *Id.* at *4. Further, this Court noted the New Mexico Supreme Court's "reference [in *Lobato*] to 'unwary claimants' and 'limited circumstances' describes a situation where a plaintiff files a Charge of

Discrimination without advice of counsel and unwittingly fails to name an individual defendant in the section of the Charge of Discrimination that asks for the name of the discriminating employer or entity." *Id.* at \*4 (citing *Muffoletto v. Christus St. Vincent Reg'l Med. Ctr.*, 157 F. Supp. 3d 1107, 1114 (D.N.M. 2015)); *see Lobato*, 2012-NMSC-002, ¶¶ 9-10, 14-15 (excusing plaintiff's administrative exhaustion requirement because NMHRA Charge of Discrimination form failed to provide plaintiff with fair and adequate opportunity to exhaust administrative remedies and equities required excusal). This Court applied the *Lobato* in concluding that a genuine issue of material fact existed as to whether the plaintiff was an "'unwary claimant' who [did] not need specifically name [some of the defendants] as discriminating parties in the section of the Charge of Discrimination asking for the names and addresses of discriminating parties." *Id.* at \*5.

The Court finds *Campos* and *Welch* distinguishable for at least two reasons. First, neither *Campos* nor *Welch* held that notice of discrimination charges amounts to notice of the institution of an action under Rule 1-015(C), or the Rule's federal counterpart. Essentially, the cases Plaintiff cites illustrate how details of discrimination in a Charge of Discrimination may exhaust administrative remedies to allow a plaintiff to sue individuals whom plaintiff believes discriminated against her. The cases do not, however, support Plaintiff's position that Defendant Macomber knew or should have known of the institution of an action merely because she was named in Plaintiff's charge of discrimination. *See Kibler v. Genuine Parts Company*, 2017 WL 4410786, at \*7 (D.N.M.) (noting purpose behind exhaustion of administrative remedies is "to give notice to the respondents and to give the respondents 'an opportunity to resolve the dispute in administrative proceedings before the NMHRD, rather than before court as defendants in judicial proceedings.'") (quoting *Lobato*, 2012-NMSC-002, ¶ 11).

Second, Plaintiff has failed to show that she met her burden that Defendant Macomber knew of any part of this case. For instance, it remains unclear whether Defendant Macomber even knew she was named in the charge of discrimination. Furthermore, Plaintiff has failed to point to any formal notice through service of process or evidence demonstrating informal notice. Thus, the Court finds that Plaintiff's Amended Complaint does not relate back and, therefore, Plaintiff's NMHRA claims against Defendant Macomber are time-barred.

*2. Implied Contract Claims*

At the December 7, 2017, hearing, Plaintiff noted that she no longer is pursuing a Breach of Implied Contract claim against Defendant Macomber, but rather is continuing to pursue a Breach of Implied Contract to Follow Certain Procedures claim. The New Mexico Jury Instruction for Implied Contract to Follow Certain Procedures asks the jury to "determine whether there was an implied agreement that _____ (*employer*) would follow a particular procedure in discharging _____ (*employee*) specifically or discharging _____'s (*employer's*) employees generally." UJI 13-2303 NMRA. Plaintiff also alleges that she is maintaining this claim because she believes that Defendant Macomber, as Defendant Magellan Health's agent, participated in the failure to follow certain procedures.

In her Amended Complaint, Plaintiff alleges that Defendants "through their written and verbal policies and procedures including its words, actions, and how it dealt with similarly situated employees created an implied agreement that Plaintiff could only be discharged after following certain progressive disciplinary procedures." (Doc. 1-1) at 14, ¶ 38. Plaintiff also alleges that Defendants breached this agreement. These allegations seem to track the New Mexico Jury Instruction on Implied Contract to Follow Certain Procedures. The Amended

Complaint does not detail, however, sufficient factual allegations to show an implied agreement existed between Defendant Macomber and Plaintiff.

The Amended Complaint's only concrete factual allegations regarding Defendant Macomber are that Defendant Macomber was Plaintiff's supervisor and that Defendant Macomber discriminated and harassed Plaintiff. As noted above, the fraudulent joinder analysis is stricter than a 12(b)(6) analysis, suggesting that the 12(b)(6) analysis is subsumed in the fraudulent joinder analysis. Even under such an exacting standard, the Amended Complaint fails to allege sufficient factual allegations to plausibly show that there was an implied agreement between Defendant Macomber and Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, Plaintiff has failed to establish a cause of action under its Implied Contract to Follow Certain Procedures claim.

Therefore, the Court concludes that Plaintiff has failed to establish a cause of action against Defendant Macomber and determines that Defendant Macomber was fraudulently joined. Because Defendant Macomber was fraudulently joined, the Court will ignore her citizenship for purposes of assessing complete diversity. Plaintiff and Defendant Magellan Health are citizens of different states, thus satisfying the complete diversity requirement under 28 U.S.C. § 1332(a)(1). Furthermore, and as shown above, the amount in controversy requirement is met. As a result, this Court has diversity jurisdiction under Section 1332(a).

### III. Conclusion

For all the above reasons, the Court denies Plaintiff's Motion for Remand.

IT IS, THEREFORE, ORDERED that

1. Plaintiff's Motion for Remand (Doc. 10) is denied; and,

2. Plaintiff show cause why Defendant Macomber should not be dismissed for failure to be served by Plaintiff.

_____
UNITED STATES DISTRICT JUDGE